BAIRD, WILLIAMS & GREER, L.L.P.
6225 NORTH 24TH STREET, SUITE 125
PHOENIX, ARIZONA 85016
TELEPHONE (602) 256-9400

Daryl M. Williams (004631)
darylwilliams@bwglaw.net
Attorneys for defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Kingman Airport Authority, | ) No. 3:17-CV-08260-JJT |
|---|---|
| Plaintiff, | ) |
| vs. | ) **Motion to Dismiss for Want of Jurisdiction** |
| City of Kingman, | ) |
| Defendant. | ) (Assigned to the Honorable John J. Tuchi) |

Kingman Airport Authority is in possession of the Kingman Airport via a lease it has with the City of Kingman. Kingman wants the Airport back, so it has filed a condemnation action to take possession of the property. The Airport Authority has no defense to the city's exercise of its sovereign right of eminent domain, so it filed this case to enjoin the city. But contrary to what the Airport Authority alleges, the city's actions nether impair the lease between the parties nor give rise to a matter subject to declaratory relief. This court lacks jurisdiction. Dismissal is required under Fed.R.Civ.P. 12(b).

/ / /

/ / /

/ / /

/ / /

/ / /

## I. THERE IS NO JURISDICTION UNDER THE CONTRACT CLAUSE

The complaint in this case predicates federal-question jurisdiction on a claimed violation of the Constitution: the contract clause.[1] Kingman Airport Authority claims the condemnation of its leasehold property rights is an impairment of its contract (the lease agreement) with the city. In 1848, however, the Supreme Court made it clear that the exercise of the right of eminent domain to eliminate contractually held property rights does not violate the contract clause.[2]

The contract rights in the 1848 Supreme Court decision involved a 1795 Act passed by the Vermont legislature creating and granting to West River Bridge Co. the right to build a toll bridge across the West River.[3] West River Bridge Co. built and operated the toll bridge for forty-seven years of the contract's one-hundred-year term before it was condemned for a public, toll-free roadway.[4] The syllabus of the court reflects why the condemnation petition was brought: so that "a great 'grievance . . . should no longer be endured. . . ' and the real estate easement or franchise of

---

[1] U.S. CONST. art. I, § 10. Complaint, Document 1, ¶ 5. This is one of two bases asserted for the exercise of federal-question jurisdiction under 28 U.S.C. § 1331. The record basis for exercise of jurisdiction is a claim for declaratory relief, considered *infra.* Supplemental jurisdiction under 28 U.S.C. § 1367 cannot exist without original jurisdiction, so it is not considered beyond this footnote.

[2] *West River Bridge Co. v. Dick*, 47 U.S. (6 How.) 507 (1848).

[3] *Id*.

[4] *Id*. The apparent provocation for the condemnation action is set forth in the prior history of the case, where the condemnor rationalized the legislature's change of mind, "The West River Bridge corporation, is, and for a long time has been a sore grievance both to the traveler and the inhabitants of the towns in the vicinity who have occasion to pass and repass, travel and labor, on said highway; and however the legislature in the infancy of the state may have exercised a sound discretion in engranting said toll-bridge, yet, in the present improved and thriving condition of the inhabitants, your petitioners are unable to discover any good reason why said grievage should longer be endured . . . or why the wealthy town of Brattleboro' should not, as well as other towns much less able, sustain a free bridge across West River."

'West River Bridge Company,' should be taken for the purpose of making a free road and bridge across said river."[5]

West River Bridge Co. was not happy about the condemnation, so it made the same claim being made by the Airport Authority in this case: that the taking was "repugnant to the tenth section of the first article of the Constitution, prohibiting the passage of state laws impairing the obligation of contracts."[6] The United States Supreme Court did not agree. It recognized the importance of the contract clause in the Constitution, but the Court held the contract clause did not come into play when the state exercises its paramount right of eminent domain, which allows the state to take property for the advantage of the whole society free from the contract rights like those of West River Bridge Co.

> No state, it is declared, shall pass a law impairing the obligation of contracts; yet, with this concession constantly yielded, it cannot be justly disputed, that in every political sovereign community there inheres necessarily the right and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large. . . . This power, denominated the eminent domain of the state, is, as its name imports, paramount to all private rights vested under the government, and these last are, by necessary implication, held in subordination to this power, and must yield in every instance to its proper exercise.[7]

While recognizing the Constitution as the supreme law of the land, the Supreme Court noted it was foolish to suppose that the Constitution manifests an intention of the individual sovereign states to relinquish their power of government and self-preservation.[8] The Supreme Court held that the right of eminent domain in no way interferes with the inviolability of contracts.

> A correct view of this matter must demonstrate, moreover, that the right of eminent domain in government in no wise interferes with the

---

[5]*Id*.

[6]*Id*. at 530.

[7]*Id*. at 531–32.

[8]*Id*. at 532.

inviolability of contracts; that the most sanctimonious regard for the one is perfectly consistent with the possession and exercise of the other.[9]

The reason the right of eminent domain does not impair a contract is because of the nature of contract rights. Contract rights exist because of the government. Without the government, the law of property would simply be might-makes-right.

> Under every established government, the tenure of property is derived mediately or immediately from the sovereign power of the political body, organized in such mode or exerted in such way as the community or state may have thought proper to ordain. It can rest on no other foundation, can have no other guarantee. It is owing to these characteristics only, in the original nature of tenure, that appeals can be made to the laws either for the protection or assertion of the rights of property. Upon any other hypothesis, the law of property would be simply the law of force.[10]

All property rights, in other words, are derived from and are subordinate to the powers of the government, and this subordination forms a part of every contract. The Constitution and the laws are a part of every contract as though they were expressly set forth therein.

> But into all contracts, whether made between states and individuals or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force.[11]

One of the inherent and paramount conditions in every contract is the right of eminent domain. The exercise of eminent domain does not impair the contract affected by it because eminent domain is an inseparable condition binding on the parties to the contract.

> Such a condition is the right of eminent domain. This right does not operate to impair the contract effected by it, but recognizes its obligation

---

[9]*Id*.

[10]*Id*.

[11]*Id*. at 532.

in the fullest extent, claiming only the fulfilment of an essential and inseparable condition.[12]

The inseparable condition that forms a part of all contracts is the right of the sovereign to exercise eminent domain at any time. The exercise of this right is merely the enforcement of the inherent contractual right in the contract and, therefore, cannot be an impairment of that contract.

> The impairing of contracts inhibited by the Constitution can scarcely, by the greatest violence of construction, be made applicable to the enforcing of the terms or necessary import of a contract; the language and meaning of the inhibition were designed to embrace proceedings attempting the interpolation of some new term or condition foreign to the original agreement, and therefore inconsistent with and violative thereof. It, then, being clear that the power in question not being within the purview of the restriction imposed by the tenth section of the first article of the Constitution, it remains with the states to the full extent in which it inheres in every sovereign government, to be exercised by them in that degree that shall by them be deemed commensurate with public necessity.[13]

The holding in the *West River Bridge* case was precise and applies with equal force to the Kingman Airport Authority in this case.

> The instances of the exertion of this power [of eminent domain], in some mode or other, from the very foundation of civil government, have been so numerous and familiar, that it seems somewhat strange, at this day, to raise a doubt or question concerning it. In fact, the whole policy of the country, relative to roads, mills, bridges, and canals, rests upon this single power, under which lands have been always condemned; and without the exertion of this power, not one of the improvements just mentioned could be constructed. . . . A franchise . . . to erect a bridge, to construct a road, to keep a ferry, and to collect tolls upon them, granted by the authority of the state, we regard as occupying the same position, with respect to the paramount power and duty of the state to promote and protect the public good, as does the right of the citizen to the possession and enjoyment of his land under his patent or contract with the state, and it can no more interpose any obstruction in the way of their exertion. **Such exertion we hold to be not within the inhibition of the Constitution, and no violation of a contract.**[14]

---

[12]*Id*. at 532–33.

[13]*Id*. at 533.

[14]*Id*. at 533–34#(bolding added).

1    Underscoring and reemphasizing its holding, the Supreme Court concluded its decision by
2    emphatically stating that a condemnation proceeding does not fall within the ambit of the contract
3    clause.

> Upon the whole, we consider the authority claimed for the state of Vermont, and the exertion of that authority which has occurred under the provisions of the statutes above mentioned, by the extinguishment of the franchise previously granted the plaintiffs, as set forth upon the records before us, as presenting no instance of the impairing of a contract, within the meaning of the tenth section of the first article of the Constitution, and consequently no case which is proper for the interposition of this court.[15]

A layman viewing the Constitutional carpet may not appreciate its underlying warp. A superficial reading of the contract clause may lead such an one to believe that a condemnation works some impairment of the obligation of contracts. But such an one does not understand. A condemnation does not implicate the contract clause, the superficial view notwithstanding.

In 1996 the United States Supreme Court recognized *West River Bridge Co.* for stating what has become even more than a rule of law: it is a canon of American jurisprudence, fundamental and unchangeable.

> One [such canon] came to be known as the "reserved powers" doctrine, which held that certain substantive powers of sovereignty could not be contracted away. *See West River Bridge Co. v. Dix*, 47 U.S. 507, 6 How. 507, 12 L. Ed. 535 (1848) (holding that a State's contracts do not surrender its eminent domain power). [Footnote omitted.] The other, which surfaced somewhat earlier in *Providence Bank v. Billings*, 4 Pet. 514 (1830), and *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 11 Pet. 420 (1837), was a canon of construction disfavoring implied governmental obligations in public contracts.[16]

The reserved powers doctrine that allowed the condemnation to go forward in *West River Bridge Co.* has also been enshrined in the Arizona Constitution.

> The right of exercising eminent domain shall never be so abridged or construed as to prevent the State from taking the property and the franchises of incorporated companies and subjecting them to public use the same as the property of individuals.[17]

---

[15]*Id*. at 536.

[16]*United States v. Winstar Corp*., 518 U.S. 839, 874 (1996).

[17]ARIZ. CONST. art. XIV, § 9.

Arizona courts have likewise consistently ruled that the right of condemnation by either the state or one of its political subdivisions (like a municipality) cannot be contracted away or limited by a contract.

> We hold that the power of eminent domain cannot be surrendered or contracted away, and that even if a contract so provides the power can nevertheless be resumed at will.[18]

## II. THERE IS NO JURISDICTION FOR DECLARATORY RELIEF

The declaratory judgment sought in this case does not help the plaintiffs, either. Since there is not and cannot be a violation of the Constitution, there is nothing to declare. Paraphrasing the language the code, there is no case or actual controversy within the jurisdiction of this court.[19]

A second problem with the claim for declaratory relief is more subtle. Kingman Airport Authority wants a declaration that the city may not enforce its legislative act via a condemnation action. Separation of powers aside, the equitable powers of this court may not be invoked to walk around a limit on the exercise of jurisdiction.

> The strong and consistently recognized national policy to avoid such needless conflict or friction between state and federal courts underlies and finds legislative expression in Section 2283 of Title 28, discussed above. It is true that this statutory denial of power to interfere with a state proceeding by injunction is not an express mandate to refrain from interference under the same circumstances by a less drastic declaration of rights. But, at least, this statute and the policy underlying it afford sound basis for a judicial conclusion that the granting of such declaratory relief would constitute an abuse of discretion.[20]

Section 2283 of Title 28 prohibits the exercise of jurisdiction to stay or affect a state-court proceeding, which is how the city's legislative mandate is being implemented.

---

[18] *Tucson Electric Power Co. v. Adams*, 134 Ariz. 396, 400 (App. 1982) (citing many similar state and federal cases).

[19] 28 U.S.C. § 2201; Complaint, Document 1, ¶ 5. This is the second and only other basis for exercise of jurisdiction.

[20] *H.J. Heinz Co. v. Owens*, 189 F.2d 505, 509 (9th Cir. 1951), *cited with approval in Samuels v. McKell*, 401 U.S. 66, 72–73 (1971).

7

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.[21]

### III. CONCLUSION

Jurisdiction in this court hangs on two pegs. The contract clause and the request for declaratory relief. The pegs are imaginary, callow. No such jurisdiction exists.

The imagined jurisdiction arises out of a contract, the lease agreement between the City of Kingman and the Kingman Airport Authority. As such, attorneys fees are awardable under A.R.S. § 12-341.01 and A.R.S. § 12-349. Attorneys fees are mandatory under A.R.S. § 12-349 when, as here, (1) a case is brought without substantial justification (actually no justification at all because it flouts a canon of law),[22] and (2) this federal case unreasonably expands the state court condemnation proceeding without any justification whatsoever.[23]

The myopia resulting in the filing of this case is the work of the Kingman Airport Authority is lawyer, so the lawyer should be responsible for fees under A.R.S. § 12-349. No good-faith basis exists for filing this case.

WHEREFORE, it is requested that this case both be dismissed and that the court assess attorneys fees against the plaintiff and plaintiff's counsel.

Respectfully submitted this 12th day of December, 2017.

    */s/ Daryl M. Williams*
    Daryl M. Williams (#004631)
    *Baird, Williams & Greer, LLP*
    6225 North 24th Street, Suite 125
    Phoenix, Arizona 85016
    darylwilliams@bwglaw.net
    (602) 256-9400
    Attorneys for defendants

---

[21] 28 U.S.C. § 2283. This statute has been the law in the United States since March 2, 1793. *H.J. Heinz Co. v. Owens*, 189 F. 2d 505, n. 3 (9th Cir. 1951).

[22] A.R.S. § 12-349(A)(1).

[23] A.R.S. § 12-349(A)(3).

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2017, I filed the Motion to Dismiss for Want of Jurisdiction via the clerk's CM/ECF filing system, and copies were electronically transmitted via the Clerk's ECF Filing system to the following:

Andrew M. Federhar
Jessica A. Gale
*Spencer Fane LLP*
2425 E. Camelback Rd., Suite 850
Phoenix, AZ 85016-4251
afederhar@spencerfane.com
jgale@spencerfane.com

*/s/ Daryl M. Williams*