**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kingman Airport Authority,<br><br>    Plaintiff,<br><br>v.<br><br>City of Kingman,<br><br>    Defendant. | No. CV-17-08260-PCT-JJT<br><br>**ORDER** |

At issue is Defendant City of Kingman's ("Kingman") Motion to Dismiss for Want of Jurisdiction (Doc. 10, Mot.), to which Plaintiff Kingman Airport Authority ("KAA") filed a Response (Doc. 18, Resp.) and Kingman filed a Reply (Doc. 21, Reply). In this Order, the Court will also resolve KAA's Motion for Preliminary Injunction (Doc. 4). The Court finds these matters suitable for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

In its Complaint (Doc. 1, Compl.), KAA alleges that it is organized under A.R.S. §§ 8423 and 8424 as an airport land lessee and a "body politic and corporate exercising its powers for the benefit of the people." Kingman is a municipal corporation and political subdivision of Arizona. Kingman has leased the Kingman Airport to KAA since 1992, and the 1992 Lease Agreement together with Amendments made in 2003 and 2007 (collectively, "Lease") have a term that expires in 2028. (Compl. Ex. 1, Lease.) The Lease sets forth the conditions under which Kingman can terminate it, including a failure

by KAA "to perform, keep and observe any and all" of the Lease terms, providing Kingman gives notice of any default or breach and a 90-day opportunity to cure to KAA. (Lease ¶ 20.) The Lease also provides for the compensation to be paid in the event the Airport is "condemned, taken or acquired by a body having superior power of eminent domain." (Lease ¶ 17.)

Kingman became dissatisfied with KAA's operation of the Airport and, on November 7, 2017, the City Council passed Resolution 5113, declaring that KAA was failing to perform under the Lease, mismanaging the Airport, "committing waste," and devaluing the City's assets. (Compl. Ex. 4, Resolution 5113.) Resolution 5113 thus authorized Kingman to acquire the Airport pursuant to the provisions of A.R.S. § 12-1111, *et seq.*—Arizona's condemnation statutes. On November 14, 2017, the City sent a letter to KAA offering to acquire the Lease and KAA's assets for zero dollars plus assumption of KAA's obligations and giving KAA 20 days in which to respond, under threat of a condemnation action.

KAA alleges that, as a result of Resolution 5113 authorizing Kingman's condemnation of KAA's leasehold, KAA may not seek damages for what otherwise would be Kingman's breach of the Lease through its failure to give KAA notice of any default or breach and a 90-day opportunity to cure, and through its termination of the Lease in the absence of any other required conditions. KAA also contends that Arizona law does not support Kingman's position that it is "a body having superior power of eminent domain" allowing it to condemn the leasehold and triggering the compensation terms of paragraph 17 of the Lease. Furthermore, KAA alleges that Kingman violated Arizona's condemnation statute, A.R.S. § 12-1112, because "the land is already appropriated to some public use" and "the public use to which it is to be applied is not a more necessary public use." (Compl. ¶ 38.)

On December 1, 2017, KAA filed a Complaint raising two claims against Kingman: (1) a claim under 42 U.S.C. § 1983 for violation of Article 1, Section 10, Clause 1 of the United States Constitution (the "Contracts Clause"); and (2) a claim under

Article II, Section 25 of the Arizona Constitution (the "State Contracts Clause"). KAA seeks injunctive relief precluding Kingman from enforcing Resolution 5113 or otherwise condemning KAA's leasehold interest in the Kingman Airport and an award of attorney's fees. Kingman now moves to dismiss this action.

## II. LEGAL STANDARD

As a threshold matter, the Court notes that Kingman styled its Motion to Dismiss as one for "Want of Jurisdiction" under "Fed.R.Civ.P. 12(b)." (Mot. at 1.) This is, at best, imprecise and, at worst, incorrect. Kingman's sole argument for dismissal is that KAA cannot state a claim under the Contracts Clause because Kingman could not surrender its inalienable power of eminent domain by way of the underlying contract—the Lease between the parties—making that contract void *ab initio* under *West River Bridge Co. v. Dix*, 47 U.S. 507 (1848) and its progeny. It is true that, if the Court dismisses the claim that provides the sole basis of the Court's federal question jurisdiction over this matter, the Court must dismiss the case for lack of subject matter jurisdiction. But the Court unquestionably has subject matter jurisdiction over a Contracts Clause claim as brought by KAA. Kingman's motion is thus a motion to dismiss the Contracts Clause claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), not a motion to dismiss for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

This is not a distinction without a difference. Apart from the different legal standards applied to the resolution of motions under Rules 12(b)(1) and 12(b)(6), the Court's Mandatory Initial Discovery Pilot ("MIDP"), as embodied in General Order 17-08, requires a defendant to file an answer to the complaint even when it has filed a motion to dismiss except when the motion is based on a lack of subject matter or personal jurisdiction, as Kingman improperly asserted in its Motion to Dismiss. General Order 17-08 also requires a defendant to serve its responses to mandatory initial discovery no later than 30 days after filing its answer. Styling a Rule 12(b)(6) motion as one for want of jurisdiction is an improper evasion of the requirements of General Order 17-08.

With regard to Kingman's request for the Court to evaluate KAA's Contracts Clause claim, a complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

In its Motion, Kingman makes a single argument. Reciting large parts of *West River Bridge*, Kingman argues that KAA fails to state a Contracts Clause claim under the reserved powers doctrine.[1]

The Contracts Clause provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. On a number of occasions, the Supreme Court has taken to laying out the scope of protection the Contracts Clause provides. In *West River Bridge*, the sole case on which Kingman relies, the State of

---

[1] Kingman does not address whether KAA properly brought its claim under 42 U.S.C. § 1983.

- 4 -

Vermont granted a charter to a private corporation to operate a toll bridge across a river. 47 U.S. at 530. Some years later, Vermont exercised its eminent domain authority to extinguish the corporation's franchise, assess just compensation, and convert the bridge to a free public highway. *Id.* at 531. In evaluating the corporation's Contracts Clause claim against Vermont, the Supreme Court concluded that the Constitution did not prevent Vermont from exercising its power of eminent domain, even if the property taken from the corporation was previously conveyed by Vermont to the corporation. *Id.* at 532-33. The resulting doctrine, labelled the reserved powers doctrine, describes the proposition that a state "may not enter a contract that 'surrenders an essential attribute of its sovereignty,'" including its power of eminent domain. *Matsuda v. City & Cty. of Honolulu*, 512 F.3d 1148, 1153 (9th Cir. 2008) (quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 23 (1977)). Such a contract is void *ab initio* and, as a consequence, "the Contracts Clause may not be used to compel a state to adhere" to the contract. *Id.* at 1152-53. "As the Court explained, all contracts, whether they are between a state and a private actor or [between] private actors alone, are made subject to the understanding that the state may one day take the subject property for public use, provided that just compensation is paid." *Id.* at 1153. Kingman argues that this holding is dispositive of KAA's Contracts Clause claim. (Mot. at 2.)

In response, KAA argues that an important distinction exists between *West River Bridge* and this case: here, the contract is between two state actors whose eminent domain powers are set forth in Arizona statutes. As a result, the Lease was not a surrender of eminent domain power and the reserved powers doctrine does not apply. (Resp. at 6.) KAA thus contends that the heightened scrutiny test announced by the Supreme Court in *U.S. Trust*, 431 U.S. at 20-21, applies to determine whether a state (or local) law violates the Contracts Clause, (Resp. at 8-9), namely, "(1) whether the state [or local] law has, in fact, operated as a substantial impairment of the contractual relationship; (2) whether the state [or local] law is justified by a significant and legitimate public purpose; and (3) whether the impairment resulting from the law was both

reasonable and necessary to fulfill such public purpose." *Matsuda*, 512 F.3d at 1152 (internal quotations and citations omitted). In its Reply, Kingman does not meet this argument as a matter of federal Constitutional law—the issue presently before the Court. Instead, Kingman states that "[t]he reason this municipal corporation versus municipality argument raises no Constitutional issues is because it is clearly a state court, state law issue." (Reply at 3.)

Essential to the application of the reserved powers doctrine is a showing that the contract in question—the Lease—prevents the state actor's exercise of the power of eminent domain, such that the state actor did not have the capacity to enter into the contract to begin with. *Matsuda*, 512 F.3d at 1154. The question before the Court is whether one state actor surrenders its eminent domain power by entering into a Lease with another state actor, where the state's statutes define the actors' eminent domain powers and the Lease itself provides the terms of compensation when a state actor "having superior power of eminent domain" condemns the leasehold interest (Lease ¶ 17). Each party to the Lease, as a state actor, has the sovereign power the *West River Bridge* Court was concerned about, that is, the "right and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large." 47 U.S. at 531. The Supreme Court's conclusion that "all *private* rights . . . are . . . held in subordination to . . . and must yield in every instance" to a state's eminent domain power, *id.* at 532 (emphasis added), is not implicated in this case where private rights are not at issue. Put another way, the question is this: Does a state relinquish its "power of self-government and self-preservation," *id.*, when one of its subdivisions leases property to another?

The parties do not cite a case resolved by the reserved powers doctrine in which the underlying contract was entered into between two state actors, nor has the Court uncovered one. *But see Municipality of Anchorage v. Alaska*, 393 F. Supp. 2d 958 (D. Alaska 2005) (recognizing the application of the Contracts Clause to contracts entered into between two state actors but analyzing the state's actions not under the

reserved powers doctrine but instead under the three-part heightened scrutiny test of *U.S. Trust*). In the more straightforward circumstance presented in *West River Bridge*, the state entered into a contract to give a private corporation the exclusive right to erect a bridge and take tolls, and the Supreme Court found the contract to be void as a surrender of the state's eminent domain power. The Ninth Circuit has subsequently applied the reserved powers doctrine in its review of the constitutionality of a state subdivision's contract with a private party and subsequent act to modify the contract. *E.g.*, *Matsuda*, 512 F.3d at 1152-54.

Here, the Lease is a contract between two state actors that contemplates condemnation by referring the parties to state law for a determination of which party has the superior power of eminent domain and what compensation should be paid in the event of condemnation. It is possible to interpret the Lease as a bargained-for procedure by which condemnation is to take place, more than a surrender of state eminent domain power. But, in the Complaint, KAA seeks to invoke the Contracts Clause to obtain injunctive relief preventing Kingman from condemning KAA's leasehold interest *in any manner*, whether through Resolution 5113 or otherwise. (Compl. at 9 ¶¶ a, b, d.) Thus, regardless of the fact that both parties to the Lease are state actors here, *West River Bridge* and its progeny operate to provide that the Contracts Clause cannot be used to enforce a contract that prevents a state actor from exercising its eminent domain power. While the Court understands KAA's concerns, in the absence of further or contrary authority, the Court will apply the reserved powers doctrine and find that Kingman's condemnation of KAA's leasehold does not contravene the Contracts Clause.

Because KAA has not stated a claim against Kingman under the Contracts Clause, and that federal question was the sole basis of the Court's subject matter jurisdiction here, the Court must dismiss this action. KAA may still raise its defenses to condemnation under Arizona law in state court, including that Kingman does not have superior eminent domain power over KAA and that the public use associated with Kingman's operation of

the airport is not more necessary than the public use associated with KAA's operation of the airport. *See* A.R.S. § 12-1112.

Kingman requests that the Court award it attorney's fees under A.R.S §§ 12-341.01 and 12-349, arguing that KAA "flouts a canon of law" by bringing this case. The Court does not find that KAA's Contracts Clause claim is "without substantial justification," *see* A.R.S. § 12-349, or meets any of the other requirements under the statutes cited by Kingman. The Court thus declines to enter an award of attorney's fees in this case. The Court also notes that KAA's briefing was of substantially more assistance to the Court in resolving the novel question before the Court than was Kingman's briefing.

IT IS THEREFORE ORDERED granting in part Defendant City of Kingman's Motion to Dismiss for Want of Jurisdiction (Doc. 10). Plaintiff Kingman Airport Authority's Contacts Clause claim (Count 1) is dismissed, but Defendant's request for an award of attorney's fees is denied.

IT IS FURTHER ORDERED denying as moot Plaintiff's Motion for Preliminary Injunction (Doc. 4).

IT IS FURTHER ORDERED dismissing this action for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 16th day of January, 2018.

_____
Honorable John J. Tuchi
United States District Judge